**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

FREEDOM MORTGAGE CORPORATION,

      Appellant,

      v.

TIFFANY D. SMITH and
MARIE-ANN GREENBERG,

      Appellees.

Civil Action No. 21cv11025 (EP)

**OPINION**

**PADIN, District Judge.**

    This is a bankruptcy appeal.[1]  Appellant Freedom Mortgage Corporation ("Freedom") is a creditor secured by a mortgage on Debtor Tiffany Smith's Newark property (the "Property").[2] Freedom appeals the Bankruptcy Court's confirmation of Debtor's Third Modified Chapter 13 Bankruptcy Plan (the "Third Modified Plan").  Bankr. D.E. 85.[3]

    The issues, while technical, boil down to this: Freedom objected to the Third Modified Plan because it: (1) credited the Property's future rents to Debtor, rather than to Freedom, as the mortgage's rent assignment required (the "*Jason Realty* issue"[4]); (2) undervalued the Property; (3) provided for unequal monthly payments; and (4) was not financially feasible.  The Bankruptcy

---

[1]  This Court has appellate jurisdiction over Bankruptcy Court decisions. 28 U.S.C. § 158(a)(1).

[2]  Co-Appellee Marie-Ann Greenberg is the bankruptcy trustee, who takes no position in this appeal.

[3]  "Bankr. D.E." refers to the bankruptcy matter's docket entries at 19bk20603.  "R." refers to the Appellant's appendix.

[4]  *In re Jason Realty, L.P.*, 59 F.3d 423 (3d Cir. 1995), which held that upon an absolute assignment of rent, the "rents are not property of the estate and are not available as cash collateral nor as a funding source for the debtor's reorganization plan."

Court held that Freedom's objections were (or could have been) raised in Debtor's prior plans, and overruled them on *res judicata* grounds.  Because the Bankruptcy Court was correct, this Court will **AFFIRM**.

## I.   BACKGROUND

### A.  Debtor files for chapter 13 bankruptcy

Debtor filed her initial Chapter 13 bankruptcy petition on August 5, 2019.  R. 16 (the "Petition").  Freedom is one of her creditors.  *Id.*  Freedom's claim was for $242,905.98, about $72,000 of which was overdue by the Petition's filing.  *Id.*  Freedom's claim was secured (prioritized) by the mortgage on the Property, a two-unit building located at 255 South 11th Street, Newark, New Jersey.[5]  *Id.*  The Property had a tenant in each unit who, at least before the COVID-19 pandemic, paid rent.

### B.  Debtor's First Modified Plan seeks to reduce Freedom's secured claim

On October 11, 2019, Debtor sought the Bankruptcy Court's confirmation of her First Modified Plan.  R. 64, *et seq.*  The Plan, as relevant here, sought to limit secured claim values., including Freedom's.  *Id.*  This took the form of a "motion to partially void liens and reclassify underlying claims as partially secured and partially unsecured" which would reduce the Property's value to $95,000."  R. 71.  Or to use bankruptcy law's colorful terminology, it would "cram down" the Property value to $95,000 and "bifurcate" the original $242,905.98 mortgage into (1) a $105,000 secured claim ($95,000 + 4% annual interest over 60 months); and (2) the rest into an unsecured claim, to be paid with other unsecured (lower priority) creditors.  *Id.*

---

[5] The Property had a second lien, not at issue here: a $106,107 judgment lien by creditor West End Properties.  R. 71.

To pay ("fund the plan"), the First Modified Plan would have Debtor pay the bankruptcy trustee (the "Trustee") $8,200[6], then $450 per month for the Plan's remaining 56 months.  R. 65. From those funds, the Trustee would pay $15,400, and the remaining secured claim would be paid through the Property's rental income, theoretically totaling $89,600 ($1,600 rental income for the 56 remaining months of the plan).  R. 72.

### C.  Freedom objects

Freedom, as one might expect, objected to most of the First Modified Plan: the cramdown and the Property's valuation at $95,000, the proposed 4% interest rate, and Debtor's failure to failure to account for all post-petition taxes and insurance (which Freedom was paying while Debtor could not).  R. 76-77.  Included in Freedom's objection was a "motion to enforce assignment of rents, requiring production of accounting and turnover of rents."  Bankr. D.E. 26-2.

Freedom objected (and continues to object here) to Debtor's use of the Property's rental income to fund the Plan (the *Jason Realty* issue).  According to Freedom, Debtor agreed, as part of the Property's mortgage, to assign the rents to Freedom upon Debtor's failure to make timely mortgage payments.  Thus, the argument goes, the rents were not Debtor's to use, and therefore could not be considered to fund the Plan.  R. 76.  And without those rents, Freedom argues, the Plan is no longer feasible.  *Id.*

### D.  The Court confirms the First Modified Plan and addresses the rent issue

After a hearing on November 14, 2019, the Court addressed the *Jason Realty* issue.  R. 78-79, 135-52.  The Court entered an order, as Freedom had requested, authorizing Freedom "to enforce the assignment of rents."  R. 79.  The Bankruptcy Court adjourned the hearing to January 23, 2020 to determine how to effectuate that ruling, as well as to address Freedom's other

---

[6] That amount was already paid over the Plan's first four months.

objections, including the Plan's feasibility. R. 153-61.   What happened at this hearing and thereafter (the First Modified Plan's confirmation by the Bankruptcy Court) is crucial to this appeal—Debtor argues that the relevant issues were all decided then, and therefore subject to *res judicata*, and Creditor argues that they were not, and therefore could be, and were, revisited later.

Before the adjourned hearing, on January 13, 2020, the Bankruptcy Court approved a Consent Order between Freedom and Debtor resolving Freedom's objections.  R. 80.  The Consent Order, as relevant here, agreed to a cramdown reducing Freedom's secured lien to the Property's fair market value: $95,000.  R. 81 ¶ 3a.  The remaining $147,905.98 would convert to unsecured debt to be paid out with the other unsecured creditors.  *Id.*

Additionally, Debtor would remain responsible for Property maintenance, tax payments, and insurance.  R. 82 ¶ 3i.  If Debtor did not pay the taxes or lacked insurance, Freedom could send a 10-day Notice of Default and then file to dismiss the bankruptcy proceeding if the default was uncured.  *Id.* ¶ 3j.  Freedom could also pay those expenses and seek reimbursement as additional debt owed by the Debtor.  *Id.* ¶ 3k.

On January 30, 2020, after the January 23, 2020 hearing, the Bankruptcy Court confirmed the First Modified Plan, which incorporated the Consent Order.  R. 84-85.  As relevant here, the First Modified Plan established an annual interest rate of 6.75% (higher than Debtor's proposed 4%) on the $95,000 cramdown value, totaling $122,022.16[7] to be paid over 60 months. R. 82 ¶3d. The Plan required $2,440 monthly payments for the First Modified Plan's remaining 52 months. R. 85.  Crucially, the parties also resolved the rent assignment (*Jason Realty*) issue by determining

---

[7] $95,000, plus $15,128.70 of interest and $11,893.46 of post-petition escrow on the Property paid by Freedom.  Smith had already paid $14,350.

that rents would be turned over to the Trustee.  R. 82 ¶ 3f.  The extent of that resolution is disputed, and discussed below.

**E.  Debtor modifies the Plan during the COVID-19 pandemic**

The COVID-19 pandemic began in March of 2020.  Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"),  broad legislation addressing the pandemic's economic effects.  Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020).  Included among its provisions was the ability for Chapter 13 debtors to extend their payment plan terms beyond 60 months.  On June 12, 2020, Debtor filed a second modified chapter 13 plan (the "Second Modified Plan") seeking an extension of her plan beyond 60 months pursuant to the CARES Act and, importantly, providing for unequal monthly payments.  Bankr. D.E. 52.  The Second Modified Plan listed monthly payments of $1,500 for six months, then $2,483.00 for the following 47 months.[8]  *Id.* at 2.  Freedom did not object, and the Bankruptcy Court confirmed the Second Modified Plan on July 10, 2020.  Bankr. D.E. 60.

As the pandemic persisted, only one of the Property's two tenants was paying rent—and even then, only partial rent.  R. 97.  Because Debtor could evict neither due to pandemic-related eviction moratoriums, Debtor moved on December 5, 2020 to modify the bankruptcy plan a third time.  R. 86.

The new application sought, again pursuant to the CARES Act, to extend the payment term to 84 months (the "Third Modified Plan").  R. 94.  The $95,000 cramdown value and escrow ($11,893.46) remained the same, but because of the longer payment period, interest would increase to $24,466.69, totaling $131,360.15 to be repaid under the plan.  R. 90.  Like the Second Modified

---

[8] The plan credited $16,350.00 paid by Debtor to that point.  Bankr. D.E. 60 at 2.

Plan, Smith would pay $1,500 payments for the first few months (but eight instead of six), then equal monthly payments ($2,010 versus the prior plan's $2,483) for the final 57 months.  R. 130.

This time, Freedom objected.  R. 99.  Part of Freedom's objection related to a January 8, 2021 Notice of Default which Freedom sent to Debtor.  R. 115.  The notice informed Debtor's counsel that Freedom had advanced 3rd Quarter 2020 taxes ($1,441.95), property insurance ($1,961.00) and 4th Quarter 2020 taxes ($1,418.10) when Debtor failed to timely pay those bills and demanded payment within 10 days to cure default.  *Id.*

On March 10, 2021, Debtor provided updated financial information.  R. 118.  Specifically, Debtor certified that the Property's tenants were expected to resume paying rent, and that Debtor expected to receive a tax refund.  R. 119.  Debtor also averred that she was "fully current with taxes through first quarter 2021 and otherwise [has funds] on hand to reimburse [Freedom] for any tax advancement they have made."  *Id.*

### F. The Bankruptcy Court confirms the Third Modified Plan, finding that Freedom's objections were precluded by *res judicata*

On March 25, 2021, the Bankruptcy Court resolved Freedom's objection by ordering Debtor to reimburse Freedom $2,860.05 for tax payments within 48 hours.[9]  R. 128, ¶ 1.  The Court reserved judgment on Freedom's remaining objections to confirmation of the Third Modified Plan.  *Id.* ¶ 3.  The parties disagreed whether Freedom's objections (the same ones at issue here) were barred by *res judicata*.  The Bankruptcy Court stated that it had not yet ruled conclusively on the matter.  R. 180.  It would later, correctly, reverse itself.

After an April 22, 2021 hearing, the Court granted the modification on April 26, 2021.  R. 129-30.  Factoring in $25,350 paid over the preceding 19 months, Debtor would pay $1,500

---

[9] Based on Freedom's submissions showing an insurance reimbursement, the Bankruptcy Court denied without prejudice that portion of Freedom's application for reimbursement.  R. 128, ¶ 2.

payments for eight months, then $2,010 monthly for the final 57 months. R. 130.[10] The unsecured creditors would be paid, *pro rata*, from the $2,010 monthly payments "after payment of all administrative, priority, and secured claims." *Id.*

The order noted that the Bankruptcy Court had considered and overruled Freedom's rent assignment (*Jason Realty*) objection on the record on April 22, 2021. The Bankruptcy Court explained its reasoning: prior to the entry of the Consent Order and First Modified Plan on January 30, 2020 establishing the $95,000 cramdown value and 6.75% annual interest rate, the parties had discussed the rent assignment issue. R. 202. And the subsequent Consent Order and confirmation, according to the Bankruptcy Court "made that issue moot." *Id.*

Likewise, the Bankruptcy Court also determined that Freedom's remaining objections regarding the Property's value, the unequal/stepped payment plan, and the feasibility of the payment plan, were also precluded by the confirmation of the First and Second Modified Plans. R. 207. The Bankruptcy Court held that Freedom's failure to appeal the First Modified Plan, or challenge the Second Modified Plan at all, precluded Freedom from objecting to the same issues in the Third Modified Plan. *Id.*

### G. This appeal

Freedom's appeal followed, asserting five claims. The primary claim, and the focus of this Opinion, is whether the Bankruptcy Court erred by invoking *res judicata* to overrule Freedom's objections and confirm the Third Modified Plan. Or phrased differently, whether Freedom's Third Modified Plan objections were (or could have been) raised or decided in response to the First or Second Modified Plans.

---

[10] Smith had already paid $25,350 over the first 19 months. R. 87, ¶ e.

The remaining four issues are the same underlying objections discussed above, which according to Freedom should have justified denial of the Third Modified Plan's confirmation. Freedom argues that the Bankruptcy Court erred in confirming the Third Modified Plan because it: (1) uses the Property's assigned rents for funding  (the *Jason Realty* issue) (Freedom Br. 13); (2) permits unequal monthly payments (*Id.* at 21); (3) ascribes a historical value to the Property that is not indicative of the Property's current value (*Id.* at 24); and (4) was not feasible because it impermissibly relied upon uncertain rental income (*Id.* at 27).

As Debtor recognizes, if the *res judicata* issue is decided in Debtor's favor, it is determinative and the other objections—having been precluded—are irrelevant.  This Court finds that to be the case.

## II.    LEGAL STANDARD

A federal district court has jurisdiction over appeals "from final judgments, orders, and decrees" of a bankruptcy court.  28 U.S.C. § 158(a)(1).  The district court must "review the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof."  *See In re United Health Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005) (cleaned up).  If necessary, the court "must break down mixed questions of law and fact, applying the appropriate standard to each component."  *Meridian Bank v. Alten*, 958 F.2d 1226, 1229 (3d Cir. 1992) (cleaned up).  The parties agree that every issue except the last (the Plan's feasibility) is a question of law reviewed by this Court *de novo*, while the feasibility issue must be reviewed for abuse of discretion.  Freedom Br. 1-2; Debtor Br. 6-7.

### III. DISCUSSION

#### A. The First and Second Modified Plans were final for *res judicata* purposes

As in other contexts, *res judicata* ("a matter decided," or claim preclusion) requires the following four elements: (1) the parties must be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same cause of action must be involved in both cases. *In re Notre Dame Invs., Inc.*, 306 F. App'x 62, 64 (5th Cir. 2009).

When a bankruptcy court enters a confirmation order, it renders a final judgment. *In re Arctic Glacier Int'l, Inc.*, 901 F.3d 162, 166 (3d Cir. 2018), *as amended* (Oct. 24, 2018) (citing 8 *Collier on Bankruptcy* ¶ 1141.01[4], at 1141-11 (Richard Levin & Henry J. Sommer eds., 16th ed. 2017)). "That judgment, like any other judgment, is *res judicata*." *Id.* "It bars all challenges to the plan that could have been raised. Challengers must instead raise any issues beforehand by objecting to confirmation." *Id.* "A plan's preclusive effect is a principle that anchors bankruptcy law: A confirmation order is *res judicata* as to all issues decided *or which could have been decided* at the hearing on confirmation." *Id.* (cleaned up, emphasis added); *cf In re Harrison*, 259 B.R. 794, 798 (Bankr. M.D. Ga. 2000) (Chapter 13 trustee's proceeding to avoid creditor's security interest in debtor's mobile home was not precluded where the avoidance issue was not raised before confirmation, and the issue could not have been raised by trustee, since she did not discover the untimely perfection of creditor's lien until after confirmation).

"Thus, the entire [confirmed p]lan is res judicata, *including its releases*." *Arctic Glacier*, 901 F.3d at 166 (emphasis added). The same is true of a consent decree, "a final judgment on the merits… accorded *res judicata* effect except where there has been an express reservation of rights." *In re Galluzzo*, No. 06-15392-SLM, 2018 WL 4191476, at *22 (Bankr. D.N.J. Aug. 14, 2018)

9

(citing *Espinosa*, 559 U.S. at 275), *aff'd*, No. 06-BK-15392, 2021 WL 9595296 (D.N.J. Oct. 25, 2021), *aff'd* No. 22-1550, 2022 WL 10319775 (3d Cir. Oct. 18, 2022). *Res judicata* is a double-edged sword, applying equally to debtors and creditors. *See, e.g., Ruhl v. HSBC Mortg. Servs., Inc.*, 399 B.R. 49, 57 (E.D. Wis. 2008) (holding that Chapter 13 debtors' attempts to recover excess interest were barred by res judicata); *In re Beam*, 510 B.R. 399, 404 (Bankr. N.D. Ga. 2014) (Chapter 13 debtors were barred from belatedly asserting that value of mortgaged property on petition date was lower for the purposes of "stripping off" junior mortgage lien).

Freedom raises three arguments against applying *res judicata* to its objections: the first is that the First Modified Plan could not be final because it violated certain Bankruptcy Code requirements—in other words, the plan should never have been confirmed. The second is that all plans, including the ones here, are subject to amendment, and therefore not final. And the final argument is that Freedom's objections to the Third Modified Plan—rent assignment, Property value, unequal payments, and payment plan feasibility—could not be barred because the Bankruptcy Court never conclusively decided them earlier.

## 1. The First Modified Plan was final, even if certain provisions violated 11 § U.S.C. 1325, because the violations do not implicate jurisdiction or due process concerns

Freedom's first argument—that the First Modified Plan was not final because it violated the Bankruptcy Code—highlights the tension between two competing Bankruptcy Code provisions: 11 U.S.C. § 1327 and § 1325.

Section 1327(a) provides that "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted or has rejected the plan." Generally, § 1327 evidences a "policy of finality…which provides that, absent fraud, confirmation of a debtor's plan binds both the debtor and the creditors." *In re Szostek*, 886 F.2d 1405, 1408 (3d Cir. 1989). "Under § 1327,

10

a confirmation order is *res judicata* as to all issues decided *or which could have been decided* at the hearing on confirmation." *Id.* at 1408 (3d Cir. 1989) (emphasis added).  Or as one leading authority stated,

> the binding effect of a chapter 13 plan extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order, including whether the plan complies with sections 1322 and 1325 of the Bankruptcy Code. For example, a creditor may not after confirmation assert that the plan was not filed in good faith, ... that the creditor should have been paid interest; that the debtor is ineligible for chapter 13 relief; or that the plan is otherwise inconsistent with the Code in violation of Section 1322(b)(10) or section 1325(a)(1).

*Id.* at 1409 (citing 5 Collier on Bankruptcy, § 1327.01 (5th ed. 1988)).

But there is some tension with § 1325(a), which "provides that a court shall confirm a plan which meets [certain] conditions listed"—for example, that the plan is proposed in good faith, that the plan is feasible, and that the debtor has complied with other federal, state and local tax regulations.  *Id.* at 1408.  Thus, the conflict is whether, absent fraud, "the failure of a creditor to attend the confirmation hearing, object timely to the plan, or"—as relevant here—"appeal the order of confirmation, regardless of the reason, precludes the creditor from obtaining full recovery of the present value of its claim when such was not provided for in the confirmed plan." *Id.*  Or asked differently: can a plan be final under § 1327 if it violated § 1325?

*Szostek*, and other cases since, have answered that question: with certain exceptions not relevant here, yes, § 1327's finality trumps § 1325's conditions.  The Third Circuit interpreted § 1325, which holds that the bankruptcy court "'shall confirm a plan *if*' certain things occur," to be discretionary.  *Id.* at 1411 (comparing § 1325 to § 1322, which unequivocally provides that bankruptcy plans "shall" have three elements) (emphasis added).  Because "creditors are obligated to take an active role in protecting their claims," Freedom's failure to timely appeal the First

Modified Plan's confirmation affords it *res judicata*, precluding Freedom's later objections to the Third Modified Plan. *Id.* at 1414.

Freedom argues that "*Szostek* was undercut in *United Student Aid Funds, Inc. v. Espinosa*, where the Supreme Court emphasized…that 'section 1325(a)…*requires* bankruptcy courts to address and correct a defect in a debtor's proposed plan even if no creditor raises the issue.'" 559 U.S. 260, 277, n.14 (2010) (emphasis in original). But *Espinosa* supports Debtor's position, not Freedom's.

First, *Espinosa* involved a Rule 60(b)(4) motion to vacate what a student loan creditor considered to be an invalid judgment. There, like here, the creditor argued that a bankruptcy court's confirmation of a plan that violates the Bankruptcy Code voids the confirmation (and the plan). *Id.* But as Freedom recognizes, *Espinosa* spoke "to the [bankruptcy] court's duty *when considering plan confirmation*." Freedom Br. 13 (emphasis added). It does not necessarily speak to what happens after the plan is already confirmed.

Second, and most importantly, the *Espinosa* Court did not—as Freedom urges here—void the bankruptcy plan's confirmation (and therefore the confirmed plan's preclusive effect). To the contrary, the Supreme Court *denied* the creditor's arguments about the confirmation's invalidity. The Supreme Court found that the defect—the bankruptcy court's failure to consider, as the Bankruptcy Rules require, whether the discharged student loans constituted an "undue hardship"— had neither jurisdictional nor due process implications. *Id.* at 271; *cf. Jacobo v. BAC Home Loans Servicing, LP*, 477 B.R. 533, 538 (D.N.J. 2012) (*res judicata* did not apply to bar secured creditor's challenge to confirmed Chapter 13 plan where debtors did not serve creditor with plan and notice of confirmation hearing).

Thus, despite the bankruptcy court's "legal error," the confirmation order "remain[ed] enforceable and binding on [the creditor] because [the creditor] had notice of the error and failed to object or timely appeal." *Id.* at 275.  "[A]fter *Espinosa,* a "'creditor…who chooses to sleep on its rights by not objecting to a plan does so at its own peril and *as long as due process requirements are met,* will be bound by it.'" *In re Diruzzo*, 527 B.R. 800, 806 (B.A.P. 1st Cir. 2015) (quoting *In re McLemore,* 426 B.R. 728, 744 (Bankr. S.D.Ohio 2010)).  Because neither jurisdictional nor due process concerns are implicated here, the First Confirmed Plan—notwithstanding its errors— can preclude Freedom's subsequent objections.

### 2. Section 1329's limited exceptions to *res judicata* do not void § 1327's preclusion

Freedom also argues that Section 1329, which permits certain post-confirmation modifications to bankruptcy plans, limits the reach of Section 1327's *res judicata* bar. Specifically, Freedom argues that "*res judicata* will not bar a post-confirmation modified plan given Congress's contrary statutory purpose evidenced by 11 U.S.C. § 1329."  Freedom Br. 6, *et seq.*  Freedom argues that applying § 1327's *res judicata* bar would "effectively render the language of 11 U.S.C. § 1329(d)(3) surplusage."  *Id.*

But Freedom has it backwards—§ 1329's few approved modifications *prove* § 1327's general *res judicata* bar.  Freedom's reading would effectively read § 1327 out of the Bankruptcy Code.  *See DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 168 (3d Cir. 2005) ("When interpreting statutory language, we must, whenever possible, read the statute in such a manner as to give effect to every part of it.") (citing *Mountain States Tel. & Tel. Co. v. Santa Ana,* 472 U.S. 237, 249 (1985)).

Section 1329 permits modifications by the "debtor, the trustee, or the holder of an allowed unsecured claim" to

(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

13

(2) extend or reduce the time for such payments;
(3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
(4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor (and for any dependent of the debtor if such dependent does not otherwise have health insurance coverage) .

Moreover, the CARES Act explicitly permitted modification by adding a provision to § 1329 which permitted a plan's modification to extend payment plans to seven years based on "material financial hardship due, directly or indirectly, to the [COVID-19] pandemic." PL 116-136, March 27, 2020, 134 Stat 28.[11] Debtor certified to that hardship. R. 96-98.

Freedom spends nearly its entire *res judicata* argument discussing cases which improperly required a "threshold showing of a change in circumstances" to use § 1329's modification mechanism—in other words, reading a requirement into § 1329 that strengthened § 1327's *res judicata* bar. *See* Freedom Br. 6-12. Freedom appears to argue that it can shoehorn its own attempt to relitigate precluded objections. But the Bankruptcy Court correctly held that Freedom could not use *Debtor's* attempt to modify the payment schedule in the Third Modified Plan—an authorized § 1329 *res judicata* exception—to relitigate *Freedom's* unrelated, precluded objections. R. 206-07; *Massachusetts Hous. Fin. Agency v. Evora*, 255 B.R. 336, 343 (D. Mass. 2000) (denying redetermination of secured claim); *accord In re Loden*, 572 B.R. 211, 219 (Bankr. W.D. Ark. 2017). Accordingly, § 1329 does not limit § 1327's preclusion.

### 3. Freedom's objections are barred by § 1327 (*res judicata*) because were (or could have been) addressed in earlier Plans, and cannot be raised here under § 1329

The remaining issue is whether Freedom's Third Modified Plan objections were substantively raised and denied (or could have been raised) in prior plan confirmations. *See Beam*,

---

[11] The provision had a sunset clause and was automatically repealed a year after passage.

510 B.R. at 406 ("Due to the binding nature of a Chapter 13 plan confirmation, …if an existing confirmed plan values collateral, and thus the secured status of an allowed claim, that valuation cannot be changed absent a modification of the plan; and modification of a confirmed plan is narrowly limited by section 1329.").  Because Freedom's Third Modified Plan objections were previously raised and decided without further appeal at the First Modified Plan's confirmation, and not raised at all during the Second Modified Plan's confirmation, they were properly barred by the Bankruptcy Court.

The record is clear regarding the Bankruptcy Court's earlier denials.  Confirming the Third Modified Plan, the Bankruptcy Court "considered the [rent assignment] objection filed by [Freedom] and response by [Debtor]" and overruled the objection "for the reasons stated on the record at the 4/22/21 confirmation hearing," *i.e.* on *res judicata* grounds  R. 130.  In other words, despite Freedom's later dissatisfaction, the matter had actually been resolved as of the First Modified Plan's confirmation on January 30, 2020.

Specifically, the rent assignment issue was discussed at length at the November 14, 2019 hearing.  R. 135, *et seq.*  That hearing began with Debtor's counsel identifying the "most pertinent issue": the "*Jason Realty*" issue.  R. 135.  In a colloquy, the Bankruptcy Court suggested that Freedom "acknowledge[s] that [the rents] are basically the debtor's property."  R. 136.  Freedom's counsel did not disagree, focusing on the logistics of the rent payment: "I think we're just looking for a method of where it's going to be sent, how it's going to be applied, et cetera.  [Debtor] has the funds[.]"  R. 136.

Throughout the proceeding, the parties debated the finer points of the rent assignment issue.  Freedom argued that the Property's mortgage, executed well before the bankruptcy proceeding, contained an "absolute assignment of rents."  R. 139.  That, according to Freedom, afforded

Freedom "an absolute right to use the rent" to offset expenses it had to pay (taxes, for example) to preserve its rights to the Property.  R. 140.

The parties specifically addressed the two diverging views on how to apply *Jason Realty*'s holding that a complete assignment of rents means that a debtor cannot utilize the rents in a bankruptcy plan.  R. 141.  The first was Judge Stern's opinion in *In re Parks*, which resolved the issue in favor of the debtor and credited rent payments toward secured debt.  No. 12-13045, 2012 WL 3561738 (Bankr. D.N.J. Aug. 16, 2012).  And the second was Judge Kaplan's opinion in *In re Surma*, which declined to follow *Parks*.  504 B.R. 770, 775 (Bankr. D.N.J. 2014).  R. 141.  The parties addressed the bifurcation of Freedom's claim into secured and unsecured claims.  R. 142.  The parties addressed a middle ground—"some kind of agreement" in which the bankruptcy trustee collects the Property's rent and sends it to Freedom, which applies it to the Plan. R. 143-44.

And ultimately, the Bankruptcy Court discussed its interpretation of both the *Parks* and *Serma* decisions.  R. 144-46.  The Bankruptcy Court, responding to Debtor's argument, stated that it "could not revise the assignment of rents because the rents are essentially not your property. You can't touch them."  R. 146.  But—again, attempting a middle ground—the Bankruptcy Court found that "the big issue…is can [Freedom] apply [the rents] toward the secured claim or can they…apply it towards [the] unsecured claim and retain [the] entire secured claim in full."  *Id.*  The Bankruptcy Court "tend[ed] to agree with…the Judge Stern view," but did not agree with money "com[ing] to the bank…not…used for purposes other than making the bank whole on the loan." R. 149-50.  "In a Chapter 13 case," the Bankruptcy Court held that it "would put the burden on the debtor to collect the rents and turn them over.  If they lose a tenant or the tenant defaults, that's the debtor's problem and [Freedom] can foreclose[.]"  R. 150.  The Bankruptcy Court also found that

"to the extent that [Freedom had] gone out of pocket for [the Property]," the Debtor would need to cover those costs without those payments applied toward the Property's cramdown. R. 151-52.

Whether the Bankruptcy Court's approach was correct or not, without further objection and apparently understanding the Bankruptcy Court's decision, Freedom's counsel promised to "discuss that with [his] client" and reserved only the issue of feasibility, which the parties then discussed on the record. R. 153. And if there remained any doubt regarding the motion to enforce the assignment of rents, it was eliminated when the Bankruptcy Court granted the motion. R. 157.

The Bankruptcy Court then discussed the exact wording of the proposed order and carried any remaining issues (none relevant here) to January 23, 2020 for final confirmation of the First Modified Plan. R. 159-161. But on January 13, 2020, and the Court approved, a consent order. The consent order, as relevant here, addressed the cramdown value, bifurcated Freedom's secured claim, and agreed that all rental payments held and received in the future by Debtor would be forwarded to the bankruptcy trustee—the *Parks* approach. R. 112. The consent order also provided that Freedom could seek the bankruptcy matter's dismissal if Debtor defaulted. R. 113.

Recall, also, that the Second Modified Plan, which introduced Debtor's step payments, was requested and confirmed without objection. The Second Modified Plan provided for step payments similar to those which Freedom would later challenge: $1,500 equal monthly payments for six months, followed by $2,440 equal monthly payments for the remaining 47 months of that plan. Bankr. D.E. 52 at 2.

The Third Modified plan, filed on December 15, 2020, sought to extend Debtor's payment term to 84 months under the CARES Act due to economic hardship. R. 87. Like the Second Modified Plan, Debtor would pay $1,500 monthly from for six months. *Id.* Debtor would then pay $2,010 monthly for the final 57 months of the plan. *Id.*

Only then did Freedom object. As relevant here, those familiar objections were: (1) that "assigned rents are 'unavailable for use, allocation or utilization in any plan,'" R. 101 at ¶ 10 (citing *Jason Realty*, 59 F.3d at 431); (2) that Debtor's "step" payment plan was neither in good faith nor feasible in violation of 11 U.S.C. § 1325, R. 101 at ¶ 11; and (3) that Debtor violated 11 U.S.C. § 1325 by undervaluing the Property, R. 101 at ¶¶ 12-14.

The Bankruptcy Court overruled the objections on the record on April 22, 2021. R. 200, *et seq.* The Bankruptcy Court recalled that there was "certainly an issue…raised by Freedom…concerning the assignment of rents issue in the *Jason Realty* case." R. 202. The Bankruptcy Court did not "recall making a decision" that the *Parks* "case was controlling authority,"[12] but believed the issue moot based on the consent order having resolved the matter. *Id.* The Bankruptcy Court noted that the Second Modified Plan provided for unequal payments: $1,500 for six months, then $2,483 for the remaining months of the plan. R. 203.

The Bankruptcy Court held that "you can't[,] in the context of modification[,] relitigate other issues that really don't relate to the modification." R. 206-07. In other words, § 1329, under which Debtor sought to modify the plan, does not "give…Freedom…who agreed to the value and who agreed to the use of the rents of the payment of the rents to the trustee," and who did not object to the Second Modified Plan utilizing step payments, R. 207-08, another opportunity to object when Debtor sought unrelated relief explicitly authorized by statute. Freedom did not have "the right to raise issues that it regrets having settled or not objected to previously." R. 210-11.

---

[12] As Debtor argues, the Bankruptcy Court's recollection was incorrect, given—as discussed above—the extensive discussion (and decision) at the First Modified Plan hearing. Indeed, in reply, Freedom acknowledges—in the context of arguing that it did not sleep on its rights—that "[t]he [B]ankruptcy [C]ourt granted the motion to enforce the assignment of rents." Freedom Reply 6. "Any disagreement…was never pursued by appeal, and therefore, is subject [to] issue preclusion now." *Id.*

Freedom could not have known—no one could have—that the COVID-19 pandemic was around the corner, that it would have disastrous economic effects, and that Congress would pass the CARES Act and include within it a provision enabling the extension of bankruptcy plan repayment terms.  As far as Freedom (or anyone) knew, the Bankruptcy Court's confirmation of the First Modified Plan at the end of January 2020 would be the last word on Debtor's bankruptcy.

But if Freedom disagreed with the Bankruptcy Court's confirmation of the First Modified Plan, including the decision on the rent assignment issue or any other, or regretted entering into the consent order, it did not timely say so.  It did not immediately appeal.  Nor did Freedom object to Debtor's Second Modified Plan months later, which, like the Third Modified Plan, utilized the CARES Act to extend the payment term and introduced the stepped payment plan.  Freedom slept on its rights, opting not to object until the *Third* Modified Plan.  Thus, the First and Second Modified Plans precluded Freedom's objections to the Third Modified Plan.

Freedom argue, without support, that it could not have appealed the First Modified Plan's Confirmation.  Reply 3.  But to the contrary, "[a] bankruptcy court's order confirming a chapter 13 plan is a final, appealable order."  *In re Thomas*, 395 B.R. 914, 917 (B.A.P. 6th Cir. 2008); *cf Bullard v. Blue Hills Bank,* 575 U.S. 496 (2015) (bankruptcy court's order denying confirmation of proposed Chapter 13 plan with leave to amend is not a "final" appealable order).

Freedom also accuses the Bankruptcy Court of "cherry picking those portions of a consent order resolving an objection to the First Modified Chapter 13 Plan that benefit the Debtor and refusing to enforce the default provisions that [Freedom] sought to exercise in the same consent order."  Freedom Br. 9-10.  Of course, this implicitly acknowledges that the Bankruptcy Court reached a decision.  Though perhaps the Bankruptcy Court's actions did not result in Freedom's

preferred outcome, they can be characterized more accurately as having "resolv[ed] the objection" in Debtor's favor.

Freedom also argues that the Bankruptcy Court understood its First Modified Plan findings to be dicta. Reply 2. There was, indeed, discussion on the record at a March 25, 2021 hearing in which the Bankruptcy Court characterized its discussion of its First Modified Plan confirmation hearing as dicta after Debtor's counsel challenged Freedom's arguments as precluded by *res judicata*. R. 191. But that comment followed earlier discussion in which the Bankruptcy Court acknowledged that it hadn't, at that time, reviewed the content of the earlier hearing, R. 188-89. And more importantly, the "dicta" comment was followed by the April 22, 2021 hearing, in which the Bankruptcy Court, having reviewed the prior documents, found Freedom's arguments to be precluded.

Accordingly, each of Freedom's objections to the Third Modified Plan were, or could have been, adjudicated in response to either the First or Second Modified Plans. But because Freedom failed to appeal the Bankruptcy Court's determinations on the rent assignment and Property valuation issues in the First Modified Plan, or object to the unequal payment and feasibility issues[13] in response to the Second Modified Plan, the Bankruptcy Court correctly held that those objections were precluded when Debtor filed the Third Modified Plan.

---

[13] Even if Freedom's objection to the unequal payments and feasibility had not been precluded, they would nevertheless have properly been denied. Numerous courts have confirmed Chapter 13 plans calling for unequal payments to secured creditors, finding that they do not violate § 1325 so long as they are feasible. *See In re Cochran*, 555 B.R. 892, 901-06 (Bankr. M.D. Ga. 2016) (analyzing the statute and Congress's intent and collecting cases). The feasibility issue, subject to a more deferential abuse of discretion standard, was properly determined in Debtor's favor during the First, Second, and Third Modified Plan confirmations.

## IV.    CONCLUSION

For the reasons above, this Court will **AFFIRM** the Bankruptcy Court's Order Confirming Debtor's Third Modified Chapter Plan (Bankr. D.E. 85).   An appropriate order accompanies this Opinion.

Dated: November 21, 2022

Evelyn Padin, U.S.D.J.